UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

GEORGE SEPULVEDA, et al.,          :
                                   :
          Plaintiffs               :      No. 1:14-CV-00789
                                   :
     vs.                           :      (Judge Kane)
                                   :
WARDEN DAVID EBBERT, et al.,       :
                                   :
                                   :
          Defendants               :

MEMORANDUM

## I. Background

On April 24, 2014, Plaintiffs George Sepulveda, Eddie Wright, Matthew A. Turner, Sony Sanchez, and Stephen McCall, inmates at the United States Penitentiary at Canaan, Waymart, Pennsylvania ("USP-Canaan"), filed a Bivens-styled unverified complaint pursuant to 28 U.S.C. § 1331[1] relating to strip searches which they allegedly were subjected to on March 22 and August 23, 2013, while housed in Unit E-2 of the penitentiary. Doc. 1. Named as defendants in the complaint are the following individuals employed at USP-Canaan: (1) David Ebbert, Warden; (2) Leonard Oddo, Associate Warden; (3) Gary Miller, Associate Warden; (4)

_____

1.  28 U.S.C. § 1331 states as follows: "The district court shall have original jurisdiction of all actions arising under the Constitution, laws, or treaties of the United States."
     Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1977), stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978).

Robert Kaszuba, Captain; (5) William Rosler, Lieutenant; (6) Ryan Rosencrance, Lieutenant; (7) Christopher Ficken, Senior Officer Specialist ("SOS"); (8) Andrew Burgh, Correctional Officer; (9) Brian Alvaro, SOS; and (10) Kyle Lindsay, Unit Manager. Id.  The Plaintiffs also named 12 "John Does" as defendants. Id. Plaintiffs allege that their rights under the Fourth and Eighth Amendments to the United States Constitution were violated by defendants when they "acted with negligence and deliberate indifference to intentionally inflict extreme and severe emotional distress" and "used excessive force via Intimidation and threats . . by making them perform a strip search together in a dirty one man shower[.]" See Id., ¶¶ 21, 22.

It is alleged in the complaint that on March 22, 2013, that Plaintiffs Sepulveda and Sanchez, who were housed in cell 125, were removed from their cell by SOS Ficken and Correctional Officer "John Doe #3" and "placed in the second floor dirty one man shower #8." Id., ¶ 8.  Sepulveda and Sanchez were allegedly ordered to strip naked  Id., ¶ 9.  Sepulveda and Sanchez further claim that they were advised (without specifying the individual who advised them) that if they did not strip and submit to a search they would be placed in the Special Housing Unit ("SHU"). Id., ¶ 9. In response to that advice, Sepulveda and Sanchez asked to speak to a Lieutenant. Id.  SOS Ficken allegedly responded by ordering Sepulveda and Sanchez to strip and also stated that they would be placed in the SHU if they failed to do so. Id. 9,10.  A

2

Lieutenant "John Doe #1" also allegedly told them to strip and if they failed to do so they would be placed in the SHU. Id., ¶ 11. Sepulveda and Sanchez complied with the orders and then were escorted "out of the shower" and returned to cell 125 by SOS Alvaro, and a Correctional Officer Simon, who is not named as a defendant in the caption or the "Defendant(s)" section of the complaint. Id., ¶¶ 4-5, 12-13.[2]

Plaintiff Wright in cell 118 of Unit E-2, who was housed with inmate Patrick Lee, were also removed from their cell and escorted to and placed in "a dirty one man shower" and ordered to undergo a strip search. Id. ¶¶ 14-15. SOS Ficken and a Lieutenant "John Doe #2" are alleged to have been involved in this strip search, including ordering Wright to do so and stating that if he failed to comply he would be placed in the SHU. Id., ¶¶ 14-18.

Plaintiffs next claim that on August 23, 2013, similar incidents took place. Plaintiff Turner alleges that on that date he was housed in cell 223 with another inmate, Jerry Burton, and that they were removed from cell 223 and escorted to "a dirty one man shower" by Correctional Officer "John Doe #4" and ordered to

---

2. In paragraph 13 Plaintiffs do not refer to Correctional Officer Simons as a defendant. However, in paragraph 33 they do refer to him as a defendant who "by witnessing Ficken's illegal action, failing to correct that misconduct . . . violated plaintiff(s) Rights under the 4th and 8th amendment . . . causing plaintiff(s) mental and emotional distress." Correctional Officer Simon was not served with the complaint and Plaintiffs did not bring the lack of service to the court's attention or file a motion with the court to have him served.

submit to a strip search. Id., ¶¶ 36-37. "John Doe #4" allegedly stated if they refused to strip and submit to a visual search they would be placed in the SHU. Id. 9,37. Turner allegedly requested to speak to Lieutenants Rosencrance and Rosler who "per order of Capt." told Turner "Strip or go to the SHU!" Id., ¶¶ 38-39. Turner complied and was visually searched by Correctional Officer "John Doe #4." Id., ¶¶ 40-41. There are no allegations that the "Capt." was present and personally ordered Turner to remove his clothes and submit to a visual inspection. Id.

Plaintiffs Wright and Sanchez allege that on August 23, 2013, they and their cell-mates were subjected to similar conduct by Defendants Burgh and Correctional Officers "John Doe #5" and "John Doe #6," respectively,[3] and that Defendants Rosencrance and Rosler were again allegedly involved to the extent that they ordered Wright and Sanchez to strip and with respect to Wright it is alleged that the order was "per Capt. Kaszuba." Id., ¶¶ 42-51. There are no allegations that Defendant Kaszuba was present and personally ordered Wright to remove his clothes and submit to a visual inspection. Id.

Finally, Plaintiffs Sepulveda and McCall allege that on August 23, 2013, they and their cell-mates were subjected to similar conduct by Correctional Officers "John Doe #7" and "John

_____

3. Wright was housed in cell 118 and Sanchez in cell 126. "John Doe #4" allegedly participated in the search of Wright and "John Doe # 6" allegedly participated in the search of Sanchez.

Doe #8," respectively,[4] and Defendants Rosencrance and Rosler were
again allegedly involved to the extent that they ordered Sepulveda
and McCall to strip "per Capt. Kaszuba." Id., ¶¶ 52-60.  There
are no allegations that Defendant Kaszuba was present and
personally ordered Sepulveda and McCall to remove their clothes
and submit to a visual inspection. Id.

There are no allegations in the complaint against
Defendants Ebbert, Oddo, and Miller other than conclusory
statements that they ordered the "4th and 8th amendment violation
caus[ing] mental and emotional distress" and failed to take
remedial actions after the incidents of March 22, 2013. See Id. ¶¶
30, 64, 65.  Plaintiffs do not allege that Defendants Ebbert,
Oddo, Miller and Alvaro were present at the time of the strip
searches were performed.  Likewise, there are only conclusory
allegations with respect Defendant Lindsay.  Lindsay purportedly
violated Plaintiffs' rights by failing to take remedial actions
after the incidents of March 22, 2013. Id. ¶ 67.

As relief Plaintiffs request (1) that the court issue a
declaratory judgment finding that their rights were violated by
the Defendants; (2) award compensatory damages in the amount of
$100,00.00 against each Defendant; (3) award punitive damages in

---

4.  Sepulveda was housed in cell 125 and McCall in cell 104.
"John Doe #7" allegedly participated in the search of Sepulveda
and "John Doe # 8" allegedly participated in the search of
McCall.  Sepulveda and McCall do not allege that Defendant Burgh
was involved in this incident.

the amount of $100,000 against each defendant; and (4) issue a preliminary and permanent injunction directing Defendants to "cease any and all strip searches with two inmates in a dirty one man shower." Id., p. 15.

Defendants Ebbert, Oddo, Miller, Kaszuba, Rosler, Rosencrance, Ficken, Burgh, Alvaro, and Lindsay were served with the complaint on October 21, 2014, and after being granted two extensions of time, they appropriately filed on March 27, 2015, a motion to dismiss and/or for summary judgement in lieu of an answer to the complaint.[5]

In the motion to dismiss and/or for summary judgment and the supporting brief, Defendants make the following arguments: (1) sovereign immunity prevents the court from entertaining Plaintiffs' official capacity claims; (2) Plaintiffs fail to state a claim upon which relief may be granted because (a) Plaintiffs fail to allege in the complaint the personal involvement of Defendants Ebbert, Oddo, Miller, Kaszuba, Alvaro and Lindsay in

---

5. The "John Does" have not been identified or served by the Plaintiffs. It is well-settled that the use of John/Jane Doe defendants absent compelling reasons will not suffice and the district court may dismiss such defendants if plaintiff, after being granted a reasonable period of discovery, fails to identify the defendants. Sheetz v. Morning Call, 130 F.R.D. 34 (E.D. Pa. 1990). Based on this court's review of the record, although their action was filed approximately 19 months ago, Plaintiffs have not yet provided this court with the identities of the John Doe defendants. Thus, this court will grant Plaintiffs ninety days from the date of this memorandum and order in which to properly identify the John Doe defendants. If plaintiff fails to timely identify those defendants, they shall be dismissed from this action. Sheetz, 130 F.R.D. at 37.

the searches, (b) Defendants Ebbert, Oddo, Miller and Kaszuba cannot be held liable based on respondeat superior, © there is no liability under the Eighth Amendment because the facts alleged do not reveal that Defendants were deliberately indifferent or used excessive force, (d) Plaintiffs cannot recover compensatory damages for emotional or mental injuries because they have failed to allege any physical injury, and (e) Plaintiff failed to adequately allege intention of infliction of emotional duress; and (3) summary judgment should be granted in favor of Defendants Rosler, Rosencrance, Ficken, Burgh and Alvaro because the undisputed facts show they had no personal involvement in the alleged searches and, in the alternative, Defendants are entitled to qualified immunity because the undisputed record reveals their conduct was objectively reasonable and lawful. (Doc. Nos. 34, 35.)

On April 10, 2015, Defendants filed a brief in support of their motion and a statement of material facts[6] in accordance with Local Rule 56.1.  M.D. Pa. LR 56.1.  On May 12, 2015, Plaintiffs filed (1) a brief in opposition (Doc. 41) to Defendants' motion and (2) a document entitled "Plaintiffs

---

6.  The statement of material facts reveals, *inter alia*, that following a homicide of a staff member at USP-Canaan in February, 2013, the institution was placed in lock down status and that the mass search performed in housing unit E2 on March 22, 2013, was the result of USP-Canaan coming off lockdown status. Furthermore, several items of contraband were recovered from E2 housing unit on March 22, 2013, including three sharpened instruments and no mass search was performed at USP-Canaan on August 23, 2013.

Counterstatement of Material Facts" attached to which were unsworn
declarations under penalty of perjury pursuant to 28 U.S.C. § 1746
from Plaintiffs McCall, Wright, Turner, and Sanchez. Doc. 40.   On
May 26, 2015, Plaintiff Sepulveda filed an unsworn declaration
under penalty of perjury. Doc. 44.   Thereafter, on June 9, 2015,
Defendants filed a reply brief.   In the reply brief, Defendants,
with respect to Plaintiffs' Fourth Amendment claims, "concede
that, at this stage, in light of the verified declarations filed,
there are material factual disputes as to Lieutenants Rosler and
Rosencrance, SOS Ficken and Correctional Officer Burgh at this
time."[7] Doc. 46, Defendants' Reply Brief, p. 4.

Defendants' motion to dismiss and/or for summary
judgment, therefore, is ripe for disposition and for the reasons
set forth below the court will (1) grant Defendants' motion to
dismiss as relates to (a) Plaintiffs' Eighth Amendment claims
against all of the Defendants, both in their individual and
official capacities, for damages and injunctive relief, (b)
Plaintiffs' Fourth Amendment compensatory damages claims relating
to emotional and mental distress, and © the Fourth Amendment
claims for damages and injunctive relief leveled against
Defendants Ebbert, Oddo, Miller, Lindsay, Alvaro and Kaszuba; and
(2) the court will deny the motion for summary judgement with

---

7.  From this statement the court concludes that Defendants are
indicating that the facts need to be developed through pretrial
discovery and that a subsequent motion for summary judgment may
be filed.

respect to Plaintiffs' claims under the Fourth Amendment leveled against Defendants Ficken, Rosencrance, Rosler and Burgh.

## II.   Motion to Dismiss

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)).  While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court  "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" Id. (quoted case omitted).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." <u>Fowler</u>, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. <u>Id</u>. at 210-11.  Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" <u>Id</u>. at 211 (quoted case omitted).

### III.  <u>Motion for Summary Judgment</u>

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "[T]his standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  <u>Anderson</u>, 477 U.S. at 248; <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Anderson</u>, 477 U.S. at 257; <u>Brenner v. Local 514, United</u>

Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283,
1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of
material fact, the court must view the facts and all reasonable
inferences in favor of the nonmoving party. Moore v. Tartler, 986
F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corp., 963
F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co.,
862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid summary
judgment, however, the nonmoving party may not rest on the
unsubstantiated allegations of his or her pleadings.  When the
party seeking summary judgment satisfies its burden under Rule 56
of identifying evidence which demonstrates the absence of a
genuine issue of material fact, the nonmoving party is required by
Rule 56 to go beyond the pleadings with affidavits, depositions,
answers to interrogatories or the like in order to demonstrate
specific material facts which give rise to a genuine issue.
Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986).  The
party opposing the motion "must do more than simply show that
there is some metaphysical doubt as to the material facts."
Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S.
574, 586 (1986).  When Rule 56(e) shifts the burden of
production to the nonmoving party, that party must produce
evidence to show the existence of every element essential to

its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.  See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

IV.  **Discussion**

　　A.  **Motion to Dismiss**

　　　　1. Official Capacity Claims

　　Plaintiffs are suing each Defendant in both the Defendant's individual and official capacity.  The Federal Government and its agencies are not subject to suit absent a waiver of sovereign immunity. See FDIC v. Meyer, 510 U.S. 471, 483 (1994); Kentucky v. Graham, 473 U.S. 159, 166 (1985); Jaffe v. United States, 592 F.2d 712, 717 (3d Cir. 1979). Although Bivens recognizes a personal-capacity cause of action for damages against federal officials for violation of rights protected by the United States Constitution, Bivens does not operate as a waiver of sovereign immunity for actions against the United States and its agencies. FDIC, 510 U.S. at 483-84.  An action for damages under Bivens may not be maintained against the United States or its agencies and a suit against a federal official for acts performed within his official capacity amounts to an action against the sovereign. Id.  Thus, a Bivens action will lie only against named

12

federal officers or agents in their personal, individual capacity. Id. Any claims for damages against defendants in their official capacity are barred by sovereign immunity because such claims are deemed to be claims against the Federal Government or its agencies. Id. Consequently, Defendants' motion to dismiss as it relates to Plaintiffs' official capacity claims for damages will be granted.

> 2. <u>Claims Against Defendants Ebbert, Oddo, Miller, Alvaro, Kaszuba and Lindsay</u>

A <u>Bivens</u> action provides a remedy against federal officials who violate certain constitutional rights. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009). The elements necessary to establish such a claim will depend on the provision of the Constitution which is alleged to have been violated. <u>Id.</u> at 676. However, a basic principle is that liability is premised on personal involvement in the alleged wrongful conduct. <u>Id.</u> In addressing whether a viable claim has been stated against a defendant the court must assess whether a plaintiff has sufficiently alleged personal involvement of a defendant in the act which the plaintiff claims violated his or her rights. Liability may not be imposed on the traditional standards of <u>respondeat</u> <u>superior</u>. <u>Capone v. Marinelli</u>, 868 F.2d 102, 106 (3d Cir. 1989) (citing <u>Hampton v. Holmesburg Prison Officials</u>, 546

F.2d 1017, 1082 (3d Cir. 1976)).  In Capone, the Third Circuit
noted "that supervisory personnel are only liable for the § 1983
violations of their subordinates if they knew of, participated in
or acquiesced in such conduct."  868 F.2d at 106 n.7.

    With respect to Defendants Ebbert, Oddo, Miller, Alvaro,
Kaszuba and Lindsay, the court discerns no allegations in the
complaint that they were involved in ordering Plaintiffs to remove
their prison clothes and submit to visual inspections on March 22
or August 23, 2013.  Moreover, to the extent that they were
involved in the handling of Plaintiffs' complaints after the
searches were conducted, such involvement is insufficient as a
matter of law to render those defendants liable. "[T]he failure of
a prison official to act favorably on an inmate's grievance is not
itself a constitutional violation." Rauso v. Vaughn, No. 96-6977,
2000 WL 873285, at *16 (E.D.Pa. June 26, 2000). See also Overholt
v. Unibase Data Entry, Inc., 221 F.3d 1335 (Table), 2000 WL
799760, at *3 (6th Cir. 2000) ("The defendants were not obligated
to 'properly' respond to Overholt's grievances because there is no
inherent constitutional right to an effective prison grievance
procedure. Hence, his allegations that the defendants did not
properly respond to his grievances simply do not rise to the level
of a constitutional violation.") (citations omitted); Mitchell v.
Keane, 974 F.Supp. 332, 343 (S.D.N.Y.1997) ("[I]t appears from the

14

submissions before the court that Mitchell filed grievances, had them referred to a prison official, and received a letter reporting that there was no evidence to substantiate his complaints. Mitchell's dissatisfaction with this response does not constitute a cause of action."); Caldwell v. Beard, No. 7-727, 2008 WL 2887810, at *4 (W.D. Pa. July 23, 2008) ("Such a premise for liability [i.e., for performing a role in the grievance process] fails as a matter of law."), aff'd, 324 F. App'x. 186, (3d Cir. 2009); Caldwell v. Hall, No. 97-8069, 2000 WL 343229, at *2 (E.D.Pa. March 31, 2000) ("The failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation."); Orrs v. Comings, Civil No. 92-6442, 1993 WL 418361, at *2 (E.D.Pa. Oct.13, 1993) ("But an allegation that a defendant failed to act on a grievance or complaint does not state a Section 1983 claim."); Jefferson v. Wolfe, Civil No. 04-44, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006) ("These allegations [of denying grievances or grievance appeals] are insufficient to establish such Defendants' personal involvement in the challenged conduct under Section 1983. See Watkins v. Horn, 1997 WL 566080, at * 4 (E.D.Pa..[sic] 1997) (concurrence in an administrative appeal process is not sufficient to establish personal involvement)"). Consequently, Plaintiffs have not stated viable claims under either the Fourth Amendment or the Eighth

Amendment to the United States Constitution against Defendants
Ebbert, Oddo, Miller, Alvaro, Kaszuba and Lindsay and the
complaint as it relates to them will be dismissed.

>    3.   Plaintiffs' Claims Under the Eighth Amendment

The fundamental principles behind an Eighth Amendment[8]
analysis reveal that "only 'the unnecessary and wanton infliction
of pain' constitutes cruel and unusual punishment forbidden by
[that Amendment]." Ingraham v. Wright, 430 U.S. 651, 670 (1977)
(citations omitted); Accord Whitley v. Albers, 475 U.S. 312, 319
(1986).  This Amendment must be interpreted in accordance with
"the evolving standards of decency that mark the progress of a
maturing society." Trop v. Dulles, 356 U.S. 86, 101 (1958).  But
a judge, when confronted with an Eighth Amendment claim, may not
impose upon a prison his or her "notions of enlightened policy."
Hassine v. Jeffes, 846 F.2d 169, 175 (3d Cir. 1988).

The right at stake here -- to be free from cruel and
unusual punishment while incarcerated -- has both objective and
subjective components. Wilson v. Seiter, 501 U.S. 294, 298
(1991).  The objective component, i.e., whether the wrongdoing is
harmful enough to establish a constitutional violation, is both
"contextual and responsive to 'contemporary standards of

---

8.  The Eighth Amendment to the United States Constitution
provides that "[e]xcessive bail shall not be required, nor
excessive fines imposed, nor cruel and unusual punishments
inflicted."

decency.'"  Hudson v. McMillian, 503 U.S. 1, 8 (1992)(quoting
Estelle v. Gamble, 429 U.S. 97, 103 (1976)). In the context of the
prison environment, "extreme deprivations are required to make out
a conditions-of-confinement claim." Id. at 9.  Part of the
penalty facing those who violate the norms of society is routine
discomfort.  Id.; Rhodes v. Chapman, 452 U.S. 337, 346 (1981).
The Eighth Amendment does not require that inmates be provided
with comfortable prisons.  Rhodes, 452 U.S. at 349; Loe v.
Wilkinson, 604 F. Supp. 130, 133-34 (M.D. Pa. 1984).  To determine
whether conditions of confinement are in violation of the Eighth
Amendment, a court must look at the totality of the circumstances.
Tillery v. Owens, 907 F.2d 418, 426 (3d Cir. 1990).

        The subjective component is met if the person or persons
causing the deprivation acted with "a sufficiently culpable state
of mind".  Wilson, 501 U.S. at 298.  The legal malice required to
satisfy the subjective component of an Eighth Amendment claim is
not present unless the defendant's conduct involved unnecessary
and wanton infliction of pain.  Id.; Ingraham, 430 U.S. at 670;
Gregg v. Georgia, 428 U.S. 153, 173 (1976).  Wantonness "does not
have a fixed meaning but must be determined with 'due regard for
differences in the kind of conduct against which an Eighth
Amendment objection is lodged.'"  Wilson, 501 U.S. at 302 (quoting
Whitley, 475 U.S. at 320).  In the final analysis the Court
concluded that an inmate must demonstrate that a prison official

was deliberately indifferent to the conditions of his or her

confinement, a showing of mere negligence is not sufficient.  Id.

at 303.  Subsequently, in Farmer v. Brennan, 511 U.S 825 (1994),

the Court described the standard for determining deliberate

indifference as follows:

> [A] prison official cannot be found liable under
> the Eighth Amendment for denying an inmate humane
> conditions of confinement unless the official knows
> of and disregards an excessive risk to inmate health
> or safety; the official must be aware of facts from
> which the inference could be drawn that a substantial
> risk of serious harm exists, and he must also draw
> the inference.

Id. at 837.  The Court added that "it is enough that the official

acted or failed to act despite his knowledge of a substantial risk

of harm." Id. at 842.

There are no allegations in the complaint from which it

can be concluded that Plaintiffs were subjected to the extreme

deprivations which would impose Eighth Amendment liability on any

of the Defendants.  The Plaintiffs do not allege in the complaint

that they were subjected to invasive body cavity searches.[9]  An

inmate being subjected to a routine, fairly brief, non-invasive

strip search upon entering or leaving a prison facility or after

an extended prison lockdown, even if conducted in a subjectively

---

9.  The declaration filed by Plaintiff Wright provides an
indication of the type of visual searches conducted on March 22,
2013.  Wright averred that they were directed to strip, bend
over, spread their buttocks and cough. Doc. 40, p. 14.

dirty shower stall, is not an extreme deprivation contemplated by the Eighth Amendment's proscription against cruel and unusual punishment. <u>See</u> <u>Florence v. Board of Chosen Freeholders of the County of Burlington</u>, ___ U.S.___, 132 S.Ct. 1510, 1515-1516, (2012); <u>Small v. Wetzel</u>, 528 F. App'x. 202, 206-207 (3d Cir. 2013); <u>Lim v. Cruz</u>, No. 14-108, 2015 WL 1185982, *7 (M.D. Pa. March 13, 2015)("As the complaint does not allege that Defendants conducted the search in a physically abusive fashion or with excessive force, Plaintiff has failed to state an Eighth Amendment claim for relief.").  While Plaintiffs have stated in a conclusory fashion that Defendants were deliberately indifferent, Plaintiffs have failed to set forth any facts in the complaint which demonstrate either the objective or subjective component of an Eighth Amendment claim.  The complaint is devoid of any allegations that the Defendants knew of a substantial risk and based upon that knowledge, ordered or participated in the alleged strip searches.  Merely stating the defendants are deliberately indifferent fails to comport with the pleading requirements of <u>Iqbal</u>.  Furthermore, there are no allegations of excessive force set forth in the complaint.  It is well-settled that verbal threats do not rise to the level of Eighth Amendment violations. <u>See</u> <u>Gannaway v. Berks County Prison</u>, 439 F. App'x. 86, 91 (3d Cir. 2011)(finding a claim of verbal harassment does not constitution

19

and Eighth Amendment violation); <u>Wright v. O'Hara</u>, 2004 WL 1793018 at *7 (E.D. Pa. Aug. 11, 2004)(words and gestures do not rise to the level of constitutional violation); <u>Murray v. Woodburn</u>, 809 F.Supp. 383, 384 (E.D.Pa. 1993)(mere harassment insufficient).  As such Plaintiffs' claims of verbal threats do not rise to the level of an Eighth Amendment violation and, consequently, all of Plaintiffs' Eighth Amendment claims will be dismissed.[10]

**B.    <u>Motion for Summary Judgment - Fourth Amendment Claims</u>**

Maintaining security and order in a penal institution is a legitimate concern and an inmate's rights under the Fourth Amendment while not totally eliminated by that concern are significantly reduced. <u>Bell v. Wolfish</u>, 441 U.S. 520, 558-60 (1979); <u>Lyon v. Farrier</u>, 727 F.2d 766, 769 (8th Cir. 1984).  An inmate may have a claim under the Fourth Amendment if he or she is subjected to an unreasonable search. <u>Small</u>, 528 F. App'x. at 206-07.  However, it is not unreasonable to conduct a non-invasive and non-abusive, strip search of inmates in groups in the context of a prison lockdown. <u>Id.</u>  In <u>Florence,</u> the Supreme Court emphasized that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of

---

10.  42 U.S.C. § 1997e(e) provides that in order for an inmate to recover for emotional distress or psychological injury there has to be a prior showing of physical injury. Plaintiffs have not alleged any facts from which it can be concluded that they suffered physical injury which resulted in emotional distress or psychological harm.

contraband in their facilities. . . . The task of determining whether a policy is reasonably related to legitimate security interests is peculiarly within the province and professional expertise of corrections officials" and "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations courts should ordinarily defer to their expert judgment in such matters." 132 S.Ct. at 1517 (citations and quotations marks omitted).

The Defendants' Statement of Material Facts indicates that Defendants Ficken, Alvaro and Burgh were employed at USP-Canaan on March 22, 2013, and it further states in relevant part as follows:

4. On March 22, 2013, there was a mass shakedown of USP Canaan housing unit E2. [citations to record omitted]

5. The March 22, 2013, mass shakedown included searches of each inmate's assigned cell as well as an additional visual search of each inmate housed in the unit. [citations to record omitted]

*    *    *    *    *    *    *    *    *    *    *

7.  The March 22, 2013, search was performed as a result of a serious incident occurring at USP Canaan which affected the safe and orderly operation of the facility. [citations to record omitted]

8.  Following the homicide of a staff member at USP Canaan in February 2013, the institution was placed on lock down status. [citations to record omitted]

9. The mass search performed on housing unit E2 on March 22, 2013, was the result of USP Canaan coming off

of lockdown status. [citation to record omitted]

10.   SOS Fickens's, SOS Alvaro's, and Correctional
Officer Burgh's participation in the March 22, 2013,
search comprised of directing inmates housed on E2 from
their cells to the shower area for visual searches.
[citations to record omitted]

11.   SOS Ficken's, SOS Alvaro's, and Correctional
Officer Burgh's involvement in these searches was
to escort the inmates as they left their cells to
the shower cells located on the unit in a safe and
orderly manner. [citations to record omitted]

12. At no time during the searches performed on
March 22, 2013, did SOS Ficken, SOS Alvaro, or
Correctional Officer Burgh have any direct involvement
in the visual searches being performed on E2
that day. [citations to record omitted]

13. SOS Ficken, SOS Alvaro, or Correctional Officer
Burgh did not direct or threaten any inmates with
disciplinary sanctions if they refused to participate
in the visual searches being performed that day on
the unit. [citations to record omitted]

14.   SOS Ficken, SOS Alvaro, or Correctional Officer
Burgh did not direct any staff member to participate or
to perform the visual searches completed on March 22,
2013, or that they observed any staff member performing
the visual searches performed that day.
[citations to record omitted]

15.   SOS Ficken, SOS Alvaro, or Correctional Officer
Burgh did not personally recover any items of contraband
during the mass search on March 22, 2013. [citations to
record omitted]

16. Several items of contraband were recovered from
E2 housing unit on March 22, 2013, including three
sharpened instruments and nuisance contraband.
[citations to record omitted]

17.   Neither a mass shakedown nor mass search was
performed at USP Canaan on August 23, 2013. [citations
to record omitted]

22

> 18. SOS Ficken, SOS Alvaro, or Correctional Officer Burgh did not participate in a mass search of any type at USP Canaan on August 23, 2013. [citations to record omitted]

Doc. 36.

The Plaintiffs' "Counterstatement of Material Facts" is not in conformity with Local Rule 56.1.[11]  It does not respond to the numbered paragraph set forth in Defendants' statement.  The Plaintiffs in the declarations attached to the "Counterstatement of Material Facts" do not deny the following assertions of fact: (1) an employee of USP-Canaan was murdered in February, 2013; (2) USP-Canaan was locked down as a result of that murder until March

---

11.  Local Rule 56.1 states as follows:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P. 56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.

> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraph set forth in the statement required in the foregoing paragraph; as to which it is contended that there exists a genuine issue to be tried.

> Statement of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.

> All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

M.D. Pa. LR 56.1.

22, 2013; (3) the mass search of unit E2 was conducted in conjunction with USP-Canaan coming off of that lockdown status; and (4) three sharpened instruments were recovered as a result of the mass search of unit E2.  Furthermore, neither the complaint nor the declarations indicate that any of the Plaintiffs were physically forced to strip and submit to a visual search or suffered any physical injury as a result of undergoing the strip search.  The allegations are merely that Plaintiffs were taken two at a time and placed in a dirty shower facility, ordered to remove their clothes and submit to a visual inspection and that if they failed to comply they would be placed in the SHU.[12]

Nonetheless, in Defendants' reply brief, Defendants concede the following:

> [At] this stage ... there are material factual disputes as to Lieutenants Rosler and Rosencrance, Senior Officer Specialist Ficken, and Correctional Officer Burgh.  As such, defendants are not seeking summary judgment for plaintiffs' Fourth Amendment claim against Lieutenants Rosler and Rosencrance, Senior Officer Specialist Ficken, and Correctional Officer Burgh at this time.

(Doc. No. 46 at 4.)  Accordingly, in light of concession of counsel for Defendants in the reply brief, the Court will deny the

---

12.  In <u>Small</u>, the Court of Appeals for this circuit noted that "a strip search conducted during a prison lockdown" is "an emergency situation where it is not unreasonable to conduct a strip search in groups" and the Plaintiffs' did not plead anything other than "the urgency and tension generally ascribed to a lockdown." 528 F. App'x. at 207.

motion for summary judgment as it relates to the Fourth Amendment claims leveled against Defendants Rosler, Rosencrance, Ficken and Burgh.

      An appropriate order will be entered.