```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                   MIDDLE DISTRICT OF PENNSYLVANIA

GEORGE SEPULVEDA, et al.,     :
        Plaintiffs            :      No. 1:14-cv-00789
                              :
    vs.                       :      (Judge Kane)
                              :
WARDEN DAVID EBBERT, et al.,  :
        Defendants            :
```

                              **MEMORANDUM**

**I. Background**

On April 24, 2014, Plaintiffs George Sepulveda, Eddie Wright, Matthew A. Turner, Sony Sanchez, and Stephen McCall, inmates at the United States Penitentiary at Canaan, Waymart, Pennsylvania ("USP-Canaan"), filed a <u>Bivens</u>-styled unverified complaint pursuant to 28 U.S.C. § 1331[1] relating to strip searches which they allegedly were subjected to on March 22 and August 23, 2013, while housed in Unit E2 of the penitentiary. (Doc. No. 1.) Named as defendants in the complaint were the following individuals employed at USP-Canaan: (1) David Ebbert, Warden; (2) Leonard Oddo, Associate Warden; (3) Gary Miller, Associate Warden; (4) Robert Kaszuba, Captain; (5) William Rosler, Lieutenant; (6) Ryan Rosencrance, Lieutenant; (7) Christopher Ficken, Senior Officer

---

1. 28 U.S.C. § 1331 states as follows: "The district court shall have original jurisdiction of all actions arising under the Constitution, laws, or treaties of the United States."
   <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1977), stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." <u>Butz v. Economou</u>, 438 U.S. 478, 504 (1978).

Specialist ("SOS"); (8) Andrew Burgh, Correctional Officer; (9) Brian Alvaro, SOS; and (10) Kyle Lindsay, Unit Manager. Id. The Plaintiffs also named 12 "John Does" as defendants. Id. Plaintiffs alleged that their rights under the Fourth and Eighth Amendments to the United States Constitution were violated by defendants when they were subjected to the visual strip searches on March 22 and August 23, 2013. Id.

As relief Plaintiffs requested (1) that the Court issue a declaratory judgment finding that their rights were violated by the Defendants; (2) award compensatory damages in the amount of $100,00.00 against each Defendant; (3) award punitive damages in the amount of $100,000 against each Defendant; and (4) issue a preliminary and permanent injunction directing Defendants to terminate the practice of conducting strip searches with two inmates "in a dirty one man shower." Id. at 15.

Defendants Ebbert, Oddo, Miller, Kaszuba, Rosler, Rosencrance, Ficken, Burgh, Alvaro, and Lindsay were served with the complaint on October 28, 2014, and after being granted two extensions of time, they appropriately filed on March 27, 2015, a motion to dismiss and/or for summary judgement in lieu of an answer to the complaint.[2]

In the motion to dismiss and/or for summary judgment and the supporting brief, Defendants made the following arguments: (1)

---

2. The "John Does" were not identified or served by the Plaintiffs.

sovereign immunity prevents the Court from entertaining Plaintiffs' official capacity claims; (2) Plaintiffs failed to state a claim upon which relief could be granted because (a) Plaintiffs failed to allege in the complaint the personal involvement of Defendants Ebbert, Oddo, Miller, Kaszuba, Alvaro and Lindsay in the searches, (b) Defendants Ebbert, Oddo, Miller and Kaszuba could not be held liable based on respondeat superior, (c) there was no liability under the Eighth Amendment because the facts alleged did not reveal that Defendants were deliberately indifferent or used excessive force, and (d) Plaintiffs could not recover compensatory damages for emotional or mental injuries because they failed to allege any physical injury; and (3) summary judgment should be granted in favor of Defendants Rosler, Rosencrance, Ficken, Burgh and Alvaro because the undisputed facts demonstrated they had no personal involvement in the alleged searches and, in the alternative, Defendants were entitled to qualified immunity because the undisputed record reveals their conduct was objectively reasonable and lawful.

On April 10, 2015, Defendants filed a brief in support of their motion and a statement of material facts[3] in accordance with

---

3. The statement of material facts revealed, *inter alia*, that following a homicide of a staff member at USP-Canaan in February, 2013, the institution was placed in lock down status and that the mass search performed in housing unit E2 on March 22, 2013, was the result of USP-Canaan coming off lockdown status. Furthermore, several items of contraband were recovered from E2 housing unit on March 22, 2013, including three sharpened
(continued...)

3

Local Rule 56.1.  M.D. Pa. L.R. 56.1.  On May 12, 2015, Plaintiffs filed (1) a brief in opposition (Doc. 41) to Defendants' motion and (2) a document entitled "Plaintiffs Counterstatement of Material Facts" attached to which were unsworn declarations under penalty of perjury pursuant to 28 U.S.C. § 1746 from Plaintiffs McCall, Wright, Turner, and Sanchez.  (Doc. 40.)  On May 26, 2015, Plaintiff Sepulveda filed an unsworn declaration under penalty of perjury.  (Doc. 44.)  Thereafter, on June 9, 2015, Defendants filed a reply brief.  In the reply brief, Defendants with respect to Plaintiffs' Fourth Amendment claims conceded that those claims should proceed pending further discovery.

On March 3, 2016, the Court issued a decision which granted in part and denied in part Defendants' motion to dismiss and/or for summary judgment.  (Doc. Nos. 52, 53.)  The Court dismissed Plaintiffs' (1) official capacity claims for damages against the Defendants, including the "John Doe" Defendants, without leave to file an amended complaint; (2) the Eighth Amendment claims asserted against Defendants, including the "John Doe" Defendants, without leave to file an amended complaint; (3) the Fourth Amendment claims for compensatory damages asserted against Defendants without leave to file an amended complaint; and (4) the Fourth Amendment claims both for nominal and punitive damages and

---

3.  (...continued)
instruments and no mass search was performed at USP-Canaan on August 23, 2013.

injunctive relief asserted against Defendants Ebbert, Oddo, Miller, Lindsay, Alvaro and Kaszuba with leave to file an amended complaint within 21-days. Furthermore, the court denied the motion for summary judgment of Defendants Ficken, Rosencrance, Rosler and Burgh with respect to Plaintiff's Fourth Amendment claims.

In the order disposing of Defendants' motion to dismiss and/or for summary judgment, the Court also provided that (1) Plaintiffs were to identify the "John Doe" defendants by June 1, 2016; (2) discovery was to be completed by June 1, 2016;(3) any further dispositive motions were to be filed by July 1, 2016; and (4) failure of Plaintiffs to identify the "John Doe" defendants would result in the dismissal of the claims asserted against those defendants. Plaintiffs did not file an amended complaint and because Plaintiffs failed to identify the "John Doe" defendants, and the Court, on July 15, 2016, dismissed the claims asserted against them. (Doc. No. 67.)

On July 1, 2016, the remaining Defendants Ficken, Rosencrance, Rosler and Burgh filed a motion for summary judgment. (Doc. No. 65.) After being granted an extension of time, those Defendants on August 12, 2016, filed a supporting brief and a statement of material facts in accordance with Local Rule 56.1. The Defendants also filed 88 pages of evidentiary materials in support of their motion. (Doc. No. 71-1.) On August 26, 2016, Plaintiffs filed a 3–page document entitled "Objection to Summary

Judgment" which was docketed by the Clerk of Court as a brief in opposition. (Doc. No. 72.) Plaintiffs did not file any evidentiary materials[4] or a response to the Defendants' statement of material facts. Consequently, the facts set forth in Defendants' statement of material facts and evidentiary materials are deemed admitted.[5] Defendants' motion for summary judgment became ripe for disposition on September 9, 2016, when they filed

---

4. None of the Plaintiffs filed affidavits or unsworn declarations under penalty of perjury in opposition to Defendants' motion for summary judgment.

5. Local Rule 56.1 states in toto as follows:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P. 56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.
>
> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraph set forth in the statement required in the foregoing paragraph; as to which it is contended that there exists a genuine issue to be tried.
>
> <u>Statement of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements</u>.
>
> <u>All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.</u>

M.D. Pa. LR 56.1 (emphasis added). A standard practice order was issued on April 24, 2014, which advised Plaintiffs of the requirements of several Local Rules of Court, including Local Rule 56.1. (Doc. No. 7.)

a reply brief. (Doc. No. 73.)  For the reasons set forth below, Defendants' motion for summary judgment will be granted.

## II. **Motion for Summary Judgment**

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d

599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

**III. Statement of Material Facts**

The statement of material facts and the evidentiary materials (Doc. Nos. 47, 47-1), to which Plaintiffs failed to respond, reveal:

> (1) the security of any Bureau of Prisons facility will be affected by the presence of contraband within its secure perimeter;
>
> (2) contraband such as prison made weapons, commonly referred to as "shanks," create an extremely dangerous situation for both the inmates as well as the staff members at the facility;
>
> (3) as a direct result of this threat, a significant effort is made by staff members to discover as well as remove such items from the facility;
>
> (4) the presence of such items in the prison is the result of the inmates fashioning weapons out of readily available materials used by inmates and the lengths the inmates will go to conceal the items from staff;
>
> (5) 28 C.F.R. § 552.11 provides in relevant part that staff of the Bureau of Prisons may conduct "a visual inspection of all body surfaces and body cavities . . . where there is a reasonable belief that contraband may be concealed on the person, or a good opportunity for concealment has occurred" and "visual search[es] shall be made in a manner designed to assure as much privacy to the inmate as practicable;"

(6) on February 25, 2013, an inmate using multiple homemade weapons killed a correctional officer at USP-Canaan;

(7) following the killing the entire institution was placed on lockdown status;

(8) while the institution is on lockdown status, inmates are confined to their cells;

(9) to come off lockdown status, besides maintaining the daily operations of the institution, security measures had to be taken to ensure that any remaining weapons present in USP-Canaan were discovered;

(10) to securely come off lockdown status a mass, targeted search of each inmate as well as their housing units had to be performed;

(11) such searches are essential following the murder of a correctional officer prior to resuming the normal and daily operation of the prison;

(12) on March 23, 2013, the five plaintiffs, George Sepulveda, Eddie Wright, Sony Sanchez, Matthew A. Turner, and Stephen McCall, were housed on unit E2 at USP-Canaan;

(13) on March 22, 2013, there was a mass shakedown of unit E2;

(14) the mass shakedown included searches of each inmate's assigned cell as well as an additional visual

search of each inmate housed in unit E2;

(15) the inmates on unit E2 were removed from their cells while the cells were searched and taken to the shower cells so that the inmates could be searched;

(16) the housing units at USP-Canaan each contain ten shower cells available to inmates;

(17) each shower cell is designed, constructed and functions in the same manner except for one shower cell that is slightly larger to accommodate a handicapped inmate;

(18) there are shower cells on both the top as well as the lower level of each housing unit at USP-Canaan;

(19) other than the handicapped shower cells, the shower cells on each housing unit measure approximately 7 feet long from the front of the shower cell door to the rear wall of the cell where the shower head is located, 3 feet wide, and 7 ½ feet from the floor to the ceiling;

(20) each shower cell has a single light measuring ten inches by ten inches mounted at the center of the ceiling of the shower cell;[6]

(21) each shower cell at USP-Canaan is enclosed by a cell door composed partly of expanded steel to permit visibility into the shower cell when in use as well as a solid steel portion covering the middle

---

6.  See Doc. No. 71-1, at 33, Attach. B, p. 2.

of the door to provide as much privacy as possible to an inmate using the shower cell in a correctional environment;

(22) the shower cells present on each housing unit provided an adequate location to perform the visual searches in an efficient manner;[7]

(23) the shower cells provided a secure location ensuring the safety of the staff member performing the visual search while considering and taking steps to safeguard as a much as possible the privacy of the inmates being searched;[8]

(24) conducting visual searches of inmates in the shower cells provided the inmates with more privacy than searching them on the range;[9]

(25) conducting the visual search in the shower cells accomplished the goals of the mass search in the most efficient and effective manner allowing the institution to return to normal operations following the staff homicide at that facility and provided the inmates with as much privacy as possible;[10]

---

7.  See Doc. No. 71-1, at 2-8, Declaration of Captain Richard Hollingsworth.

8.  Id.

9.  Id.

10.  Id.

(26) the mass searches conducted on March 22, 2013, were conducted in accordance with 28 C.F.R. § 552.11;[11]

(27) several items of contraband were recovered from E2 housing unit on March 22, 2013, including three sharpened instruments and nuisance contraband;[12]

(28) in August of 2013, there were a series of mass searches performed at USP-Canaan in response to information received from an outside agency validating a threat of harm against a staff member at USP-Canaan[13]

(29) the August 2013 searches were to identify, locate, and remove any items of contraband from selected housing units with the facility;[14]

(30) on August 11, 2013, there was a mass shakedown of USP-Canaan housing unit E2, where plaintiffs were housed;

(31) the mass shakedown was performed in the same manner as the one performed on March 22, 2013 and conducted in accordance with 28 C.F.R. § 552.11;[15]

(32) several items of contraband were recovered from E2 housing unit on August 11, 2013, including one

---

11.  Id.

12.  Id.

13.  Id.

14.  Id.

15.  Id.

13

>sharpened instrument and nuisance contraband;[16] and (33) none of the inmates were physically touched by Bureau of Prisons employees during the visual strip searches performed on March 22 and August 11, 2013.[17]

As stated above, Plaintiffs did not respond to Defendants' statement of material facts or present any evidentiary materials which contravene the evidentiary materials submitted by Defendants.

**IV.   Discussion**

Maintaining security and order in a penal institution is a legitimate concern and an inmate's rights under the Fourth Amendment, while not totally eliminated by that concern, are significantly reduced. Bell v. Wolfish, 441 U.S. 520, 558-560 (1979); Lyon v. Farrier, 727 F.2d 766, 769 (8th Cir. 1984). An inmate may have a claim under the Fourth Amendment if he or she is subjected to an unreasonable search. Small v. Wetzel, 528 F. App'x 202, 206-07 (3d Cir. 2013). However, it is not unreasonable to conduct a non-invasive and non-abusive, strip search of inmates in groups in the context of a prison lockdown or when faced with a security threat to a correctional officer. Id. For example, in Florence v. Board of Chosen Freeholders, the United States Supreme Court emphasized that "correctional officials must be permitted to

---

16. Id.

17. See Doc. 71, Defendants' Statement of Material Facts, ¶¶ 20, 29.

devise reasonable search policies to detect and deter the possession of contraband in their facilities. . . . The task of determining whether a policy is reasonably related to legitimate security interests is peculiarly within the province and professional expertise of corrections officials" and "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations courts should ordinarily defer to their expert judgment in such matters." Florence v. Bd. of Chosen Freeholders of Cty. of Burlington, 566 U.S. 318 (2012)(citations and quotations marks omitted).

Plaintiffs' in their brief in opposition, which was unverified, for the first time claimed they were treated differently from all other inmates during the shakedown. Such a claim was not raised in the complaint and it is not supported by the evidence in the record or prior assertions made by them. A review of the complaint reveals no indication or allegation that Plaintiffs were ever treated differently from any other inmate being searched in March and August 2013. In fact, it reveals quite the opposite as the complaint makes reference to at least five other inmates not parties to the lawsuit who were also placed in a one-man shower with another inmate to be visually searched.

It is well-settled that plaintiffs cannot amend their complaint in a brief in opposition. Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988).

Furthermore, Plaintiffs were given an opportunity to amend their complaint and they declined to do so. Moreover, as noted the record does not support a claim of a denial of equal protection. The Fourteenth Amendment of the Constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The Court of Appeals for the Third Circuit has observed that the equal protection clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Artway v. Attorney General, 81 F.3d 1235, 1267 (3d Cir. 1996)(quoting Cty. of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)); see also Kuhar v. Greensburg-Salem Sch. Dist., 616 F.2d 676, 677 n.1 (3d Cir. 1980)("An equal protection claim arises when an individual contends that he or she is receiving different treatment from that received by other individuals similarly situated.").[18]

A litigant in order to establish a viable equal protection violation must show an intentional or purposeful discrimination. Snowden v. Hughes, 321 U.S. 1, 8 (1944); Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985), cert denied, 475 U.S. 1096 (1986); E & T Realty v. Strickland, 830 F.2d 1107, 1113-14 (11th

---

18. In Bolling v. Sharpe, 347 U.S. 497 (1954) the Supreme Court applied the Fourteenth Amendment's concepts of equal protection to the federal government through the Due Process Clause of the Fifth Amendment.

Cir. 1987), cert. denied, 485 U.S. 961 (1988).  This "state of mind" requirement applies equally to claims involving (1) discrimination on the basis of race, religion, gender, alienage or national origin, (2) the violation of fundamental rights and (3) classifications based on social or economic factors.  See, e.g., Britton v. City of Erie, 933 F. Supp. 1261, 1266 (W.D. Pa. 1995), aff'd, 100 F.3d 946 (3d Cir. 1996); Adams v. McAllister, 798 F. Supp. 242, 245 (M.D. Pa.), aff'd, 972 F2d 1330 (3d Cir. 1992).

Plaintiffs have failed to allege facts from which it can be concluded that Defendants engaged in intentional or purposeful discrimination or that they were treated differently than similarly situated individuals on the basis of their race or some other impermissible reason.  This case has been pending since 2014 and it would be inequitable to allow an amendment sua sponte at this time.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

As stated previously, the only remaining claims in this case are Plaintiffs' claims under the Fourth Amendment.  Based on Defendants' statements of material facts and the evidentiary materials and the lack of opposing evidentiary materials, the Court concludes that there are no triable issues of material fact regarding Plaintiffs' claims under the Fourth Amendment and, consequently, Defendants Ficken, Rosencrance, Rosler and Burgh are entitled to judgment as a matter of law.

An appropriate order will be entered.